UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RAYMOND HENLEY,

                   Petitioner,                  Case No. 2:13-cv-309

v.                                        Honorable Maarten Vermaat

JEFF WOODS,

                   Respondent.
_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner has consented to the conduct of all proceedings in this case, including entry of a final

judgment and all post-judgment matters, by a United States Magistrate Judge.  (ECF No. 41.)

        Petitioner Raymond Henley is incarcerated with the Michigan Department of

Corrections at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan.

On October 29, 2010, Petitioner pleaded *nolo contendere* in the Wayne County Circuit Court to

kidnapping, in violation of Mich. Comp. Laws § 750.349; felonious assault, in violation of Mich.

Comp. Laws § 750.82; assault with intent to do great bodily harm (AGBH), in violation of Mich.

Comp. Laws § 750.84; and first-degree criminal sexual conduct (CSC-I), in violation of Mich.

Comp. Laws § 750.520b.  On November 24, 2010, the court sentenced Petitioner as a fourth

habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 13 years, 11 months

to 25 years for kidnapping and CSC-I, 5 to 10 years for AGBH, and 2 to 4 years for felonious

assault.  Additionally, the court sentenced Petitioner to lifetime electronic monitoring upon his

release, as mandated by statute for his CSC-I conviction.  The lifetime electronic monitoring requirement lies at the heart of Petitioner's habeas challenges.

On September 30, 2013, Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

I.      The sentencing court put an additional penalty (lifetime electronic monitoring) on Petitioner's sentence that he was never informed of, but the sentencing court never gave Petitioner an opportunity to withdraw his plea.

II.     Defense counsel never informed me about the additional penalty.

(Pet., ECF No. 1, PageID.6–7.)  Respondent filed an answer to the petition (ECF No. 6) stating that the grounds should be denied because ground I was a state law claim not cognizable on habeas review and, in any event, meritless, and that the Court could not grant relief on ground II because Petitioner had failed to present the issue to all levels of the state appellate system and it was therefore unexhausted.

The Court agreed that ground II was unexhausted.  (Op., ECF No. 15.)  Petitioner sought a stay to permit him to return to the trial court and exhaust the issue in the state courts.  (ECF No. 18.)  The Court obliged.  (ECF No. 19.)

Petitioner filed a motion for relief from judgment in the trial court.  That court denied relief on March 21, 2017.  (Wayne Cnty, Cir. Ct. Order, ECF No. 31-4.)  Petitioner sought leave to appeal in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered September 14, 2017, and December 1, 2017, respectively.  (Mich. Ct. App. Order, ECF No. 31-5, PageID.621; Mich. Order, ECF No. 31-6, PageID.747.)  Petitioner then returned to this Court and filed an amended petition raising the following issues:

I.      The sentencing court put an additional penalty (lifetime electronic monitoring) on Petitioner's sentence that he was never informed of, but the sentencing court never gave Petitioner an opportunity to withdraw his plea.

II.     Defense counsel never informed me about the additional penalty.

III.  Defense counsel was ineffective for failing to object, properly advise Mr. Henley of the direct consequences, or move to withdraw plea at the time of sentencing, [or object to the illusory] plea [agreement].

(Am. Pet., ECF No. 29, PageID.467–470.)  Respondent has answered the petition, arguing that ground I continues to be not cognizable on habeas review and is, in any event, meritless, and arguing that Petitioner's grounds II and III are simply meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that habeas ground I is, in part, not cognizable and it is meritless.  Further, I find that habeas grounds II and III are meritless.

## Discussion

### I.  Factual allegations

The facts underlying Petitioner's prosecution were detailed in summary at his plea hearing:

> [T]he complainant was on her way to a bus stop, to meet a friends, when an unknown black male grabbed [her] by the arm, had a knife.  The complainant tried to fight the black male but was unable to do so.  The male then dragged the complainant behind some stores, forced her to take off her clothes with a knife to her throat and forced her to perform oral sex, penis to mouth. . . . the [male] ejaculated and then made her spit out his semen.  He then ran off.

> The complainant was taken to St. John's Hospital where a rape kit was performed.  The rape kit was analyzed by the Michigan State Police.  A CODIS hit report came back, stating that the DNA found in the rape kit belonged to [Petitioner].

> [T]he nurse at the preliminary exam . . . indicated that [the complainant] had an injury to her arm with a splint, she had abrasions to her body, she also had a swollen eye and . . . abrasions to her buttock area as [as] her knees and elbows.

(Plea Hr'g Tr., ECF No. 7-4, PageID.190.)  The summary at the plea hearing does not really spell out the brutality of Petitioner's attack.  The victim's testimony at the preliminary examination tells a more complete story.  Additionally, Petitioner had previously committed at least one, and perhaps two, similar attacks.

3

The plea is not challenged except with regard to the consequence of lifetime electronic monitoring that follows conviction of first-degree criminal sexual conduct.  The state court record was silent on that consequence until Petitioner was actually sentenced.

On appeal, Petitioner attacked his conviction and/or sentence based on the trial court's failure to disclose the consequence during the plea hearing and the trial court's failure to *sua sponte* permit Petitioner to withdraw his plea because, according to Petitioner, the sentence including lifetime electronic monitoring exceeded the *Cobbs* agreement.[1]  It is worth noting that Petitioner's claim on appeal was not that his counsel did not tell him that the CSC-I conviction carried a penalty of lifetime electronic monitoring or that Petitioner did not know that the CSC-I conviction carried a penalty of lifetime electronic monitoring.  He claimed only that the Court failed to inform him of that penalty.

Petitioner asked the court of appeals to either permit him to withdraw his plea or to remand so that he could be resentenced without the consequence of lifetime electronic monitoring. That second option, however, was not possible as lifetime electronic monitoring is a mandatory consequence of a conviction for CSC-I.  Mich. Comp. Laws § 750.520b(2); *People v. Comer*, 901 N.W.2d 553, 560 (Mich. 2017) ("[T]he trial court was required to impose lifetime electronic monitoring.  Because defendant's judgment of sentence did not include this statutorily mandated punishment . . . his sentence was invalid.") (footnote omitted).  Petitioner's path to relief, therefore, necessarily required withdrawing his plea.

---

[1] A "*Cobbs* agreement" is the result of a form of sentencing negotiation as described in *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993).  In *Cobbs*, the Michigan Supreme Court approved the practice of judicial involvement in plea/sentence bargaining.  *Id*. at 211.  The court authorized state trial court judges to, at the request of a party, provide a preliminary evaluation of the sentence that the judge would impose.  *Id*. at 211-12.  The parties may then base a plea and sentencing agreement on that number.  *Id*.  If the court decides to exceed that number at sentencing, the court must permit the defendant to withdraw his or her plea.  *Id*.

It is also worth noting that withdrawal of Petitioner's plea would carry significant consequences.  Petitioner's CSC-I and kidnapping charges were both life offenses and counsel estimated the guidelines minimum range for those offenses to be 11 years, 3 months to 37 years, 6 months.  (Plea Hr'g Tr., ECF No. 7-4, PageID.172.)  The minimum ranges for the other offenses were shorter, but not insignificant.[2]  Moreover, because of Petitioner's habitual offender status, those offenses were potential life offenses as well.  Finally, Petitioner's sentences for the kidnapping and assault offenses could have been consecutive to his sentence for CSC-I.  Mich. Comp. Laws § 750.520b(3).  Thus, if Petitioner withdrew his plea, went to trial, and the jury convicted him of the charged offenses, Petitioner could face four concurrent life sentences or a consecutive minimum sentence string that would be 75 years long and still fall within the minimum guidelines range.

Petitioner is presently 64 years old.  *See* Michigan Dep't of Corr. Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=141431 (visited Sept. 1, 2021).  If he stands by his plea, he will have the possibility of release on parole at the age of 67 and the assurance of discharge by the age of 78, to be followed by electronic monitoring for the rest of his life.  If he withdraws the plea, he will face trial.  The victim's compelling account of Petitioner's crimes, as set out in the preliminary examination transcript, is confirmed by the presence of Petitioner's DNA in the victim's mouth.  And the credibility of her account would be further corroborated by Rule 404(b) testimony from at least one other woman that Petitioner grabbed by the neck, dragged into an alley, and forced to perform oral sex while he threatened her with a sharp instrument.   Unless Petitioner were able to convince a jury that his

---

[2] Because Petitioner's offenses preceded the 2012 amendments to the habitual offender statutes, he avoided the mandatory 25-year minimum sentence that would have applied to all of his convictions if the offenses were committed now.  *See* Mich. Comp. Laws § 769.12(1)(a).

DNA made its way into the victim's mouth in some consensual way, despite her severe injuries, he would lose at trial on the CSC-I charge and he would be facing lifetime electronic monitoring if, indeed, he ever got out.

By order entered December 21, 2011, the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 7-6, PageID.211.)  Petitioner, with the assistance of counsel, then applied for leave to appeal to the Michigan Supreme Court.  Petitioner raised three issues: (1) he challenged whether lifetime electronic monitoring was an applicable penalty for CSC-I against a victim not less than 13 years of age; (2) he claimed the plea was unknowing because the court did not inform Petitioner of the lifetime electronic monitoring penalty; and (3) he argued that counsel rendered ineffective assistance because he did not object to the court's imposition of lifetime electronic monitoring. (Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 7-7, PageID.277–291.)   The prosecutor responded by arguing that Petitioner was barred from challenging his plea as unknowing because he had failed to timely move to withdraw his plea.  Petitioner replied by adding a claim that his initial appellate counsel was ineffective for failing to move to withdraw his plea.  (Pet'r's Mich. Reply Br., ECF No. 7-7, PageID.334–338.)  Petitioner did not, however, claim that counsel had not informed him regarding the electronic monitoring requirement or that Petitioner did not know about the lifetime electronic monitoring requirement.  By order entered January 18, 2013, the Michigan Supreme Court denied leave to appeal because they were "not persuaded that the question presented should be reviewed . . . ."  (Mich. Order, ECF No. 7-7, PageID.275.)

Petitioner then filed his initial petition.  In that petition, for the first time, Petitioner argued that "defense counsel never informed me about the additional penalty or any other direct consequences."  (Pet., ECF No. 1, PageID.7.)  Respondent argued that issue was unexhausted.

Petitioner argued that he had raised the issue in the appellate courts.  Review of his appellate pleadings, however, indicates that he only referred generally to claims of ineffective assistance, not the specific claim that counsel did not inform him about the penalty or that Petitioner did not know about the penalty.  In fact, Petitioner continued to hedge his claims:

> "Petitioner was not informed that he might be subject to a mandatory minimum penalty of lifetime electronic monitoring ***at the time of his plea*** . . . ."  (Pet'r's Reply Br., ECF No. 12, PageID.376) (emphasis added);
>
> "***At the Cobbs hearing*** Petitioner was not informed that he will be subjected to a mandatory minimum penalty of lifetime electronic monitoring . . . ."  (*Id.*, PageID.379) (emphasis added);
>
> "Counsel was constitutionally ineffective for failing to object to  . . . lifetime electronic monitoring . . . when in fact lifetime monitoring didn't apply in this case, because the victim was 43 years of age."  (*Id.*)

Petitioner never claimed his counsel did not tell him, nor did Petitioner claim that he did not know of the penalty.

In responding to the order to show cause for the stay and abeyance remedy, Petitioner fleshed out, for the first time, the claim at the heart of his amended habeas petition:

> Defendant's guilty plea was not an understanding one where defense trial counsel was constitutionally ineffective in failing to inform Defendant that a consequence of his guilty plea was lifetime electronic monitoring.

(Pet'r's Response to Show Cause Order, ECF No. 18, PageID.402.)  The factual claim that counsel never informed Petitioner of that consequence is repeated throughout Petitioner's response.  In that response Petitioner also indicated for the first time that he would not have entered his plea, but would have insisted on going to trial, if he had known of the consequence of lifetime electronic monitoring.

The Court entered the stay and Petitioner returned to the trial court.  He submitted an affidavit stating, *inter alia*:

5.      There was never any mention from [defense counsel] of anything about lifetime electronic monitoring as part of the sentence.  I knew nothing about it when I was considering the plea offer.

6.      Had [defense counsel] informed me that I would be placed on lifetime electronic monitoring, I definitely would not have entered the no-contest plea and insisted on going to trial in this matter.

7.      In fact, at the time, I had never even heard of mandatory lifetime electronic monitoring.

(Pet'r's Aff., ECF No. 31-2, PageID.548–549.)  The trial court described Petitioner's claims as "specious."  (Wayne Cnty. Cir. Ct. Op., ECF No. 31-4, PageID.616.)  The court denied relief. Petitioner sought leave to appeal in the Michigan Court of Appeals and then the Michigan Supreme Court.  Those courts denied leave by orders entered September 14, 2017, (Mich. Ct. App. Order, ECF No. 31-5, PageID.621), and July 3, 2018, (Mich. Order, ECF No. 31-6, PageID.690), respectively.  Petitioner then filed his amended petition.

## II.      AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020)

8

(quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough*, 541 U.S. at 664.  "[W]here the

precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001).  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "[I]f a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies."

*Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Plea withdrawal

As part of his first habeas ground, Petitioner claims the trial court should have permitted him to withdraw his plea.  A state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

## IV.    Plea validity

The crux of Petitioner's habeas petition is the claim that his plea was constitutionally invalid.  The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.

To find a guilty plea constitutionally valid, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976);

*Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be

the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of

the defendant" or of state- induced emotions so intense that the defendant was rendered unable to

weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v.*

*United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which

deprive it of the character of a voluntary act, is void.").  The defendant must also understand the

consequences of his plea, including the nature of the constitutional protection he is waiving.

*Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of

just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be

accepted unless made voluntarily after proper advice and with full understanding of the

consequences.") (internal quotations and citation omitted).  In *Brady*, the Supreme Court stated

that a defendant entering a plea must be "fully aware of the direct consequences" of the plea.

*Brady*, 397 U.S. at 755.

Finally, the defendant must have available the advice of competent counsel.  *Tollett*,

411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14

(1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily

and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that

in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give

the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that

coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of

counsel will render a plea of guilty involuntary.  *See Hill*, 474 U.S. at 56–57.

Petitioner contends that his plea was not "knowing" because he was not aware of

the consequence that he would be subject to lifetime electronic monitoring as a direct penalty for

12

his CSC-I conviction.  Petitioner blames the trial court and his counsel for his ignorance regarding that penalty.

Because electronic monitoring would be a direct consequence of Petitioner's plea,[3] the trial court was required to advise Petitioner regarding that penalty.  *Hall v. Gainsheimer*, 137 F. App'x 866, 869 (6th Cir. 2005).  Because the court failed to do so and accepting Petitioner's affidavit regarding his ignorance as true, Petitioner's plea was, at least to some extent, not "knowing."  *Id*.  Merely demonstrating that error, however, does not entitle Petitioner to relief.  He must also "demonstrate that he was prejudiced by the trial court's failure to advise him about the [direct consequence] at the time of his plea."  *Id*.  He must show that, "but for the trial court's failure to properly advise him . . ., he would not have pleaded guilty."  *Id*.  Otherwise, the error would be deemed harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *Hall*, 137 F. App'x at 869.

Counsel, too, must inform his client of the direct consequences of his plea to render effective assistance.   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

---

[3] In *People v. Cole*, 817 N.W.2d 497 (Mich. 2012), the Michigan Supreme Court resolved any possible doubt regarding the nature of lifetime electronic monitoring:

> While there is considerable debate about the exact placement of the dividing line between the collateral and direct consequences of a plea, *see Padilla v. Kentucky*, 559 U.S. 356, n. 8 (2010), we need not explore this oft-nuanced distinction because we agree with the Court of Appeals that mandatory lifetime electronic monitoring is *part of the sentence itself*.  Because lifetime electronic monitoring is part of the sentence itself, it is a direct consequence of a guilty or no-contest plea to a charge of CSC–I . . . when the defendant is sentenced to prison.

*Cole*, 817 N.W.2d at 502 (emphasis in original, footnote omitted).

*Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is

14

on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Supreme Court held that the failure to advise a defendant of a significant collateral consequence of his guilty plea—almost certain deportation—fell below an objective standard of reasonableness.  Certainly, therefore, failure to advise a defendant of the direct consequences of his plea would constitute deficient performance as well.  The Court concludes that if counsel failed to inform Petitioner of the direct consequence of lifetime electronic monitoring, counsel's performance failed to meet an objective standard of reasonableness.  To prevail on his ineffective assistance claim, Petitioner must also show that if counsel had informed Petitioner of the penalty of lifetime electronic monitoring, he "would have insisted on going to trial."  *Hill*, 474 U.S. at 59.

Whether Petitioner's ignorance of the penalty was the fault of the court or counsel, Petitioner must show prejudice.  Petitioner insists he would have gone to trial if he had only known.  That claim was not made until years after his trial.  He made it first when he filed his response to this Court's order to show cause.  The continuing evolution of Petitioner's claim over the years to something that is potentially viable does not reflect well on the credibility of that claim.  But there are more significant reasons to doubt that Petitioner would have indeed insisted on going to trial.

In *Lee v. United States*, 137 S. Ct. 1958 (2017), the Supreme Court cautioned that courts "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded . . . [but] should instead look to contemporaneous evidence to substantiate defendant's expressed preferences."  *Id*., at 1967.  In *Lee*, counsel had improvidently advised the

15

defendant that he would not be deported based upon the crime to which he pleaded guilty.  The

contemporaneous evidence supported Lee's after-the-fact statements that he would have insisted

on going to trial.  When Lee entered his plea, he stated on the record that the prospect of deportation

would affect his decision to plead guilty.  Lee alleged that "deportation was the determinative

factor for him; deportation after some time in prison was not meaningfully different from

deportation after somewhat less time[; h]e . . . would have rejected any plea leading to

deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial."  *Id.*

Petitioner's counsel acknowledged that deportation was the determinative issue in deciding

whether to accept the plea.  *Id.* at 1963.  And, Lee's claim was credible:

> There is no reason to doubt the paramount importance Lee placed on
> avoiding deportation.   Deportation is always "a particularly severe penalty,"
> *Padilla*, 559 U.S., at 365 (internal quotation marks omitted), and we have
> "recognized that 'preserving the client's right to remain in the United States may be
> more important to the client than any potential jail sentence,'" *id.*, at 368 (quoting
> *St. Cyr*, 533 U.S., at 322; alteration and some internal quotation marks omitted);
> *see also Padilla*, 559 U.S., at 364 ("[D]eportation is an integral part—indeed,
> sometimes the most important part—of the penalty that may be imposed on
> noncitizen defendants who plead guilty to specified crimes." (footnote omitted)).
> At the time of his plea, Lee had lived in the United States for nearly three decades,
> had established two businesses in Tennessee, and was the only family member in
> the United States who could care for his elderly parents—both naturalized
> American citizens.  In contrast to these strong connections to the United States,
> there is no indication that he had any ties to South Korea; he had never returned
> there since leaving as a child.

*Id.* at 1968.

The *Lee* Court specifically rejected a *per se* rule that a defendant could not show

prejudice "where his only hope at trial was that something unexpected or unpredictable might

occur that would lead to acquittal."  *Id.* at 1966.  But that does not mean that the likely result at

trial is irrelevant:

> As a general matter, it makes sense that a defendant who has no realistic defense to
> a charge supported by sufficient evidence will be unable to carry his burden of
> showing prejudice from accepting a guilty plea. . . .   A defendant without any viable

> defense will be highly likely to lose at trial.  And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial.  But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake.  It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea.  *See Hill*, 474 U.S., at 59.  Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.

*Id*.

Where Lee made a significant showing that that he would have insisted on going to trial and why, Petitioner offers only the words that he would have "insisted on going to trial." (Pet'r's Response to Order to Show Cause, ECF No. 18, PageID.404; Pet'r's Aff., ECF No. 31-2, PageID.549.)  Petitioner offers no explanation of why, and the decision defies logic.

Petitioner's prospects for success at trial were nonexistent.  He had a significant history of committing similar crimes.  *See*  https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=141431 (visited Sept. 1, 2021).  Petitioner has not identified any evidence he could offer to counter the victim's account or to explain how his DNA ended up in her mouth.  The likelihood that Petitioner would end up with a life sentence, either by specific order of the court or because a term-of-years minimum would exceed Petitioner's expected life span, was great.

While Lee could explain why deportation was so odious to him that the risk of a worse outcome at trial was worth it, Petitioner does not even attempt to explain why lifetime electronic monitoring is so unbearable or, for that matter, worse than a life spent in prison.  Moreover, Petitioner demonstrated a pattern of resolving his prior prosecutions for criminal sexual conduct by plea.  *Id*.

Petitioner offers no contemporaneous evidence—or even after-the-fact evidence—to support his claim that he would have insisted on going to trial because of the prospect of lifetime electronic monitoring.  He does not identify any federal authority, much less clearly established

federal law, to support his claim that simply saying the words "I would have insisted on going to trial" suffices to demonstrate prejudice in these circumstances.  Accordingly, Petitioner has failed to show that the state court's rejection of the claim that Petitioner's plea was involuntary or unknowing is contrary to, or an unreasonable application of, clearly established federal law. Moreover, the trial court's conclusion that Petitioner's claim is specious finds ample support in the record.

## V.     Trial counsel's failure to seek plea withdrawal

Although Petitioner's claim that the trial court should have permitted plea withdrawal is not cognizable on habeas review, his claim that counsel rendered ineffective assistance for failing to seek that relief is reviewable.  But because the underlying claim—the propriety of plea withdrawal—is a state-law claim, the Court is bound by the state court's determination of that issue.  Petitioner argued to the Michigan Court of Appeals that the trial court should have let Petitioner withdraw his plea, (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 7-6, PageID.215), the Michigan Court of Appeals concluded that the claim lacked merit, (Mich. Ct. App. Order, ECF No. 7-6, PageID.211).

As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67–68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  The court of appeals' determination that the trial court's refusal to permit plea withdrawal was proper is, therefore, axiomatically correct on habeas review.

18

Because the trial court acted properly when it did not allow Petitioner to withdraw his plea, the proposed motion seeking that relief would have been meritless. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, any claim that counsel rendered ineffective assistance because he failed to seek plea withdrawal fails and Petitioner has likewise failed to demonstrate that the state court's rejection of the claim is contrary to, or an unreasonable application of clearly established federal law.

## VI.      Trial counsel's failure to object to lifetime electronic monitoring

Petitioner also contends it was ineffective assistance for counsel to forego an objection to the trial court's sentence including lifetime electronic monitoring when the court and counsel had failed to advise Petitioner of that consequence at the plea. To the extent that Petitioner contends that objection may have permitted Petitioner to withdraw his plea, that claim is meritless for the reasons stated above. To the extent Petitioner contends that objection may have permitted Petitioner to avoid that lifetime electronic monitoring requirement, that claim is meritless as well. As explained above, lifetime electronic monitoring is a mandatory consequence of a conviction for CSC-I. Mich. Comp. Laws § 750.520b(2); *Comer*, 901 N.W.2d at 560.

Moreover, for the reasons stated above, the plea was very favorable to Petitioner and there was virtually no possibility for Petitioner to achieve a better result. Petitioner has failed to demonstrate that it was professionally unreasonable for counsel to push forward with the plea— even if Petitioner was previously unaware of the penalty of lifetime electronic monitoring— because the *Cobbs* agreement, even with the addition of lifetime electronic monitoring, was a far better result that Petitioner could ever hope to achieve if he abandoned the plea.

19

In short, Petitioner has failed to show that the state court's conclusion that trial counsel rendered effective assistance is contrary to, or an unreasonable application of, *Strickland*. Accordingly, he is not entitled to habeas relief on that claim.

## VII.   Appellate counsel's failure to challenge the ineffectiveness of trial counsel's assistance

Finally, Petitioner contends that his appellate counsel rendered ineffective assistance because she did not challenge trial counsel's ineffective assistance or because she did not move to withdraw the plea.  The *Strickland* standard applies to claims of ineffective assistance of appellate counsel; but the scope of professionally reasonable conduct for appellate attorneys may be broader.  For example, an appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 689.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.* at 288.

For all of the reasons stated above, Petitioner's claims that trial counsel rendered ineffective assistance or that appellate counsel should have moved to withdraw the plea are not stronger than the issues counsel raised on appeal.  In fact, those issues lack merit.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752.  Therefore, Petitioner has failed to show that the state courts' rejection of his ineffective

20

assistance of appellate counsel claims are contrary to, or an unreasonable application of clearly established federal law. Once again, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I will deny Petitioner a certificate of appealability on each of his issues.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial

21

of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

For the foregoing reasons, the Court will enter a judgment denying the habeas corpus petition and an order denying a certificate of appealability.

Dated:    September 2, 2021                              /s/ *Maarten Vermaat*
                                                        Maarten Vermaat
                                                        United States Magistrate Judge

22